UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Docket No. 2:13-cr-00064-NT |
| | ) |
| JERMAINE WHINDLETON, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

Defendant Jermaine Whindleton filed a *pro se* motion for compassionate release on September 29, 2020 ("**Def.'s Mot.**") (ECF No. 170). After reviewing the motion, I appointed counsel to represent Mr. Whindleton (ECF No. 174). Appointed counsel filed the pending amended motion for compassionate release ("**Def.'s Am. Mot.**") (ECF No. 188), which the Government opposes (ECF No. 191). For the reasons explained below, Mr. Whindleton's amended motion for compassionate release is **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

On April 9, 2014, Mr. Whindleton was convicted of one count of possessing a firearm after having previously been convicted of three prior violent felonies or serious drug offenses, pursuant to the Armed Career Criminal Act ("**ACCA**"). Presentence Investigation Report ("**PSR**") ¶¶ 1, 4 (ECF No. 173-3). On September 3, 2014, I sentenced Mr. Whindleton to 180 months imprisonment and five years of supervised release. Judgment (ECF No. 123). By my calculations, he has served almost 102 months. The Bureau of Prisons, having considered deductions for good

conduct, lists a projected release date of April 20, 2025. Accordingly, Mr. Whindleton has served over 56% of the sentence I imposed and over 66% of his sentence if good-time deductions are factored in.

Mr. Whindleton is currently detained at Coleman II USP ("**Coleman II**"). Probation Summary (ECF No. 173). Coleman II has a population of 943 inmates, https://www.bop.gov/locations/institutions/clp/ (last visited Dec. 10, 2020), and is currently reporting that one inmate and twenty-two staff members have active COVID-19 infections,[1] Bureau of Prisons, COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/ (last visited Dec. 10, 2020). There has been one inmate death at Coleman II but no staff deaths, and 214 inmates and twenty staff members have recovered from the virus. *Id.*

Mr. Whindleton requests compassionate release primarily due to his underlying medical condition. That is, he has asthma and has been prescribed an albuterol inhaler. PSR ¶ 46. Mr. Whindleton's asthma has persisted since at least 2014, and he continues to use an inhaler. PSR ¶ 46; Def.'s Am. Mot. Exs. 4–9 (ECF Nos. 189-5–189-10).

The Government acknowledges that Mr. Whindleton has exhausted his administrative remedies by requesting compassionate release from the Warden at Coleman II. Gov't's Obj. to Def.'s Mots. for Compassionate Release ("**Gov't's Opp'n**")

---

[1]   Coleman II USP ("**Coleman II**") is a part of the Coleman Federal Correctional Complex ("**CFCC**"), which consists of four facilities, Coleman II, Coleman I USP, FCI Coleman Low, and FCI Coleman Medium. USP Coleman II, https://www.bop.gov/locations/institutions/clp/ (last visited Dec. 10, 2020). In his amended petition, the Defendant provides information about the number of COVID-19 infections at all four facilities comprising CFCC. Def.'s Am. Pet. for Compassionate Release 3 & nn. 4–5 (ECF No. 188). The Defendant does not explain the relevance of the infection rates outside of Coleman II.

8 n.7 (ECF No. 191). Mr. Whindleton's request was denied in September of 2020. Letter from Warden to Whindleton (ECF No. 170-23).

## LEGAL STANDARD

Section 3582(c)(1)(A) provides that:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
>     (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>         (i) extraordinary and compelling reasons warrant such a reduction . . .
>
>         (ii) and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

The United States Sentencing Commission's policy statements on compassionate release are found at § 1B1.13 of the sentencing guidelines. Section 1B1.13 provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if,

after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

> (1)(A) Extraordinary and compelling reasons warrant the reduction;
>
> . . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (U.S. Sentencing Comm'n 2018).

The Sentencing Commission elaborates on what constitutes "extraordinary and compelling reasons" in the Commentary to § 1B1.13. In discussing medical-based reasons, the Commission writes:

> (A) **Medical Condition of the Defendant.—**
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is —
>
> > (I) suffering from a serious physical or medical condition,
> > (II) suffering from a serious functional or cognitive impairment, or
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> ....

4

*Id.* § 1B1.13 cmt. n.1. The Note addresses age-based and family-based reasons in subdivisions (B) and (C), and then provides: "**Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."[2] *Id.*

---

[2] Prior to the passage of the First Step Act of 2018 ("**First Step Act**"), only the Director of the Bureau of Prisons ("**BOP**") could move for modification of a sentence. In December of 2018, Congress amended § 3582(c) to allow inmates to seek a modification of sentence from the courts directly "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (codified at 18 U.S.C. § 3582(c)(1)(A)). Because the Sentencing Commission lacks a quorum, it has not considered whether to amend the commentary to § 1B1.13 in light of the First Step Act. *See United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020).

Subdivision (D) to Application Note 1 specifies that "the Director of the Bureau of Prisons" may decide if other extraordinary and compelling circumstances exist that warrant compassionate release. U.S.S.G. § 1B1.13, Application Note 1. Following the enactment of the First Step Act, district courts have split on the question of "whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)." *Brooker*, 976 F.3d at 234. This Court and three others in the First Circuit have concluded that, given the First Step Act, courts may consider other extraordinary and compelling reasons for compassionate release, notwithstanding the language of Subdivision (D). *See United States v. Calhoun*, No. 2:15-cr-00056-JDL-1, 2020 U.S. Dist. LEXIS 117527, at *3 (D. Me. July 1, 2020) ("[T]he Court's authority to grant compassionate release is not limited by the policy statement's definition of 'extraordinary and compelling reasons' warranting a reduction in sentence under 18 U.S.C.A. § 3582(c)(1)(A)(i) after the First Step Act."); *United States v. Nelson*, No. 12-cr-111-PB-1, 2020 WL 6275232, at *1 (D.N.H. Oct. 26, 2020) (concluding the same); *United States v. Vigneau*, C.R. No. 97-cr-33-JJM-LDA, 2020 WL 4345105, at *3 (D.R.I. July 21, 2020) ("Because the Sentencing Commission's policy statement section 1B1.13 and Application Notes are now incompatible with the statute itself, the Court need not follow the outdated portion of this commentary that is contradictory to federal law."); *United States v. Pena*, 463 F. Supp. 3d 118, 127 (D. Mass. 2020) (describing the requirement of subdivision D that the BOP determine that an extraordinary and compelling reason exists as "vestigial and inoperative" after the First Step Act). The two circuit courts to have addressed the issue agree. *See United States v. Jones*, No. 20-3701, 2020 WL 6817488, at *7 (6th Cir. Nov. 20, 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release."); *Brooker*, 976 F.3d at 235–37 ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."). Some district courts in other circuits have held that § 1B1.13 remains unchanged, regardless of the First Step Act, and continues to apply as written. *See, e.g.*, *United States v. Baye*, 464 F. Supp. 3d 1178, 1189–90 (D. Nev. 2020) ("While the First Step Act expanded the scope of who could bring [§ 3582(c)(1)(A)] motions, it did not affect the rest of [§ 1B1.13], including how the [Sentencing] Commission defined 'extraordinary and compelling reasons,' nor its partial delegation of this authority to the [BOP] Director."); *United States v. Garcia*, 457 F. Supp. 3d 651, 656 (C.D. Ill.

## ANALYSIS

As the compassionate release statute and guidelines indicate, I may modify a sentence of imprisonment if I find that: (1) extraordinary and compelling reasons warrant modification, (2) modification accords with the § 3553(a) sentencing factors, (3) the petitioner is not a danger to the safety of any other person or the community, and (4) modification is consistent with applicable policy statements of the Sentencing Guidelines. The Government has conceded that Mr. Whindleton's asthma constitutes an extraordinary and compelling reason warranting modification but argues that he should not be released because he is a danger to the community. Gov't's Opp'n 9–11. Specifically, the Government highlights Mr. Whindleton's prior criminal activity, which consists of multiple crimes of violence and the usage of weapons. Gov't's Opp'n 11. Because I agree with the Government that Mr. Whindleton remains a danger to the community, and thus that compassionate release is not warranted, I need not conduct the remainder of the analysis.

Between 2005—when he was only nineteen—and 2011, Mr. Whindleton had nine separate criminal convictions, most of which involved violence, weapons, and/or drugs. PSR ¶¶ 25–33. Three of these offenses constituted "violent felon[ies]" or "serious drug offense[s]" within the meaning of ACCA. *See United States v. Whindleton*, 797 F.3d 105, 107–08, 111, 116 (1st Cir. 2015). The offense of conviction

---

2020) (concluding that the definition of "extraordinary and compelling reasons" does not directly conflict with the text of the First Step Act and "therefore conclud[ing that] the policy statement has not been overridden by the First Step Act to allow courts the same discretion conferred to the BOP Director by the Sentencing Commission's policy statement").

subsequently occurred in June 2012, and that offense, too, involved violence and a dangerous weapon. PSR ¶ 6.

Given this long history of violent crime, there is, unfortunately, a strong likelihood that Mr. Whindleton will recidivate. Firearms offenders in general recidivate at a significantly higher rate than non-firearms offenders. *See* U.S. Sentencing Comm'n, Recidivism Among Federal Firearms Offenders 4 (2019) (finding that 68.1% of firearms offenders released in 2005 recidivated versus 46.3% of non-firearms offenders). Firearms offenders also recidivate more quickly after they are released from incarceration, and they are more likely to commit more serious crimes. *Id.* Offenders convicted under ACCA ("**armed career criminals**") recidivate at similar rates to other firearm offenders. *Id.* at 34. However, armed career criminals recidivate even more quickly than other firearms offenders. *Id.* In a recent Sentencing Commission study, of those armed career criminals who were rearrested after being released from incarceration, the median time to rearrest was twelve months. *Id.* Given that Mr. Whindleton is a firearms offender and an armed career criminal, I consider these statistics particularly relevant in evaluating his danger to the community.

In his initial motion, as well as in his amended petition, Mr. Whindleton emphasizes his efforts at rehabilitation. Def.'s Mot. 2–3; Def.'s Mot. Exs. 1–3G (ECF Nos. 170-1–170-22); Def.'s Am. Mot. 6. In particular, Mr. Whindleton has taken various educational and vocational courses, as well as parenting, anger management, and drug abuse courses. These efforts are laudable, but they do not assuage my

concerns about the risk that Mr. Whindleton poses to the community were he released at this juncture. His extensive criminal history and the statistics of similarly-situated offenders demonstrate a high likelihood of recidivism that I cannot ignore. Given this high likelihood of recidivism, compassionate release is not appropriate under these circumstances.

It is not enough that Mr. Whindleton has shown that there exists an extraordinary and compelling reason warranting his release. In order to be entitled to a modification of his sentence, he must also show that he is not a danger to the community, and he has failed to meet that burden.

## CONCLUSION

For the foregoing reasons, the Motion for Compassionate Release is **DENIED**.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated: December 10, 2020